UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PEDRO BONET,

                          Plaintiff,

                                                            DECISION AND ORDER

                                                            01-CV-6078L

               v.

DARYL F. SHAW,
JAMES B. CASSELBERRY,
JAMES E. SANTOS,
RICK E. STROMAN,
J.K. MOSS,

                          Defendants.
_____

       Plaintiff, Pedro Bonet ("Bonet"), commenced this civil rights action pursuant to 42 U.S.C. § 1983 against five correction officers, Sergeant Daryl Shaw ("Shaw"), Officer James Casselberry ("Casselberry"), Officer James Santos ("Santos"), Officer Rick Stroman ("Stroman"), and Officer James Moss ("Moss"), employed by the New York State Department of Corrections ("DOCS"). Bonet contends that the five officers used excessive force against him on February 3, 1998, in violation of the Eighth Amendment of the Constitution while Bonet was confined at the Southport Correctional Facility.

       Bonet originally filed his complaint *pro se,* but the Court did appoint counsel to represent Bonet for certain pretrial proceedings and at trial. Plaintiff waived his right to a jury trial and the

case was tried before the Court for two days, commencing October 13, 2009.  Bonet testified, as did all of the defendant officers.  Numerous exhibits were received, including photographs, reports relating to the incident, and pertinent documents from Bonet's medical records.  In addition, the Court viewed a video (Ex. 12) from a security camera which showed activities among Bonet and the defendants which occurred in the hallway outside Bonet's cell.

After considering all the evidence, I believe that plaintiff has failed to carry his burden, by a preponderance of the evidence, that the defendants separately or together violated his constitutional rights by using excessive force.  It is clear that some force was used on Bonet, but I find that Bonet has failed to establish that the officers acted maliciously and sadistically for the purpose of causing him harm and injury.  Rather, I find that the force used was not unreasonable and was necessitated to control Bonet who acted in a disruptive fashion, assaulting one of the officers, Casselberry, by spitting in his face, as the officers were about to escort Bonet to a disciplinary hearing in another part of the facility.  This Decision and Order constitutes my findings of fact and conclusions of law pursuant to FED. R. CIV. P. 52(a).

## FACTS

It was established through testimony of plaintiff and the defendants that Bonet was confined to the Southport Correctional Facility.  Southport is a unique, disciplinary facility housing approximately 780 inmates who are confined based on disciplinary sentences at other facilities. Virtually all the inmates are confined to their cells, 23 hours a day, with the most severe restrictions on movement and privileges.  They are housed in what is called a Special Housing Unit.   Inmates

are confined, one inmate per cell and they receive, at their choice, exercise outside the cell for only one hour per day. Inmates take all meals in the cell and do not have contact with other inmates. One witness testified that Southport is considered a maximum-maximum security facility.

It was also established that in Southport itself, there are levels of restrictions. Certain inmates require more restraints than other inmates. Bonet was one of those inmates. He was confined in Cell Block D, the most restrictive, and he was classified as a Level 1 inmate and had the most restrictions and the fewest privileges. Bonet was handcuffed to a waist-chain every time he left his cell. In addition, he was required to be pat frisked prior to any travel from the cell.

On February 3, 1998, defendants Casselberry, Santos, Stroman, and Shaw proceeded to Bonet's cell to escort him to a disciplinary hearing. It was not uncommon for several officers to assist in the process of removing an inmate from his cell and transporting him to another part of the facility.

Casselberry had no prior contact whatsoever with Bonet, but the other officers, who worked in the D Cell Block, knew plaintiff. In fact, Bonet had filed grievances against one of the officers, Officer Santos, a few weeks prior to the February 3 incident.

Normal procedure was followed in removing Bonet from his cell. In his case, because of a medical problem, Bonet was allowed to be handcuffed in the front ("front cuff order"), which was contrary to the normal practice of handcuffing behind the back. Bonet's handcuffs were secured to a waist-chain. Bonet was directed to back out of the cell and submit to a pat frisk, which he did.

The security video (Ex. 12) shows Bonet standing outside of his cell with his back to the four officers. Plaintiff testified that Casselberry, who was conducting the frisk, asked him to stretch his

legs further apart but plaintiff claimed he told the officer he could not do so because of a prior injury. In any event, Bonet and Casselberry testified that Casselberry conducted the pat frisk.

Casselberry testified that during a typical pat frisk, the inmate is frisked starting at the neck area and proceeding to cover the inmate's entire body. It includes a touching or frisking of the inmate's groin area.

Bonet testified that he thought Casselberry touched his groin area in too firm a manner, and he objected. Casselberry and the other officers were unclear as to specifics, but it does appear that at least some were aware that for some reason plaintiff was unhappy about the frisk. The actual frisk is shown on the video. The time notations show that the entire frisk only took about 30 seconds. From my observation of the video, there appears to be nothing unusual about the pat frisk procedure, which was performed in full view of the security camera.

In any event, immediately after Bonet was directed to turn and proceed toward the hearing, he turned in the opposite direction and spat directly into Casselberry's face. From the tape, it appears that Casselberry was standing within inches of Bonet when this occurred. Not only did the officers testify about the spitting, but Bonet, himself, admitted spitting at the officer in his direct testimony, apparently because he was upset about the manner in which he was frisked. After the spitting episode, the video shows that the officers instantaneously grabbed Bonet and pushed him forward into his cell. The hall security camera did not pick up any activities that occurred inside Bonet's cell. The time notations on the video show that the officers were in the cell for only about three minutes.

After the officers left the cell, they stood outside the cell for about a minute as they maneuvered Bonet to the door so they could extract the handcuffs through the hatch in the door.

Casselberry testified that Bonet spat directly into his face and started to do it again. Casselberry and other officers testified that when an inmate is disruptive in that fashion and/or commits an assault or unhygienic act, officers routinely "take the inmate down" to the ground to better control him. Several officers testified that the best and safest way to control an inmate was to place him on the ground. Sergeant Shaw and others testified that the spitting and the seizure of Bonet in taking him to the ground occurred very quickly, within seconds. It was the officers' intent to take Bonet to the ground to get control of him, and that is what they did.

All of the officers testified that as they took Bonet to the ground, he continued to struggle and attempted to kick and elbow the officers. Sergeant Shaw testified that he was the last officer into the cell and he ordered Bonet to stop struggling but he continued to do so. Shaw testified that spitting at an officer was against the rules of the facility, it was an obvious unhygienic act, it constituted an assault and was considered a disturbance. In his view, corrections officers are entitled to take reasonable steps to quell such a disturbance.

Officer Stroman testified that he attempted to control Bonet who was kicking his legs around violently as he laid on the floor. Because of Bonet's continued struggling, Stroman sat on his legs.

Bonet admitted spitting at Officer Casselberry, and he also confirmed much of what the officers said about what transpired after the spitting incident. He testified that he fell forward into his cell and that two officers, Santos and Casselberry, fell to the ground with him. Bonet admitted that he was struggling with the officers as he lay on the ground. Bonet claimed he struggled because one of the officers, Santos, had grabbed him around the neck, which made it difficult to breathe.

The officers testified that they took Bonet to the ground, subdued him, and handcuffed him in the rear so that they could safely leave Bonet in the cell and exit with the handcuffs.

All of the officers denied striking, punching or kicking Bonet. They admitted using some force to subdue and restrain Bonet. Bonet, on the other hand, claims that he was struck repeatedly in the face, ribs and neck. Bonet claims he was struck repeatedly by several officers with fists and with their feet. He could not state the number of times he was hit but the clear inference was that he was hit and struck so many times that he could not accurately count the number of blows. He specifically alleged that Casselberry kicked him in the face and that Sergeant Shaw came into the cell and struck him with a baton.

Bonet denied that his injuries were caused by hitting his head on any furniture in the cell, but he did acknowledge that he and the officers fell down together on the concrete floor as the officers attempted to subdue him.

It does appear from the medical records and several photographs of plaintiff that he did receive some injuries around the head and face. There were abrasions, discoloration and a hematoma on the face, a cut on his face above the left eye, as well as injuries to the right side of plaintiff's face.

Plaintiff claims that he received treatment for several months after the incident. X-rays were taken of his face and there were no fractures. Initially, he had problems with his eye and his vision seemed affected for a period of time, but this condition abated after a few months.

Bonet claims that the injuries were all caused by the officers' excessive use of force. The officers all testified that they were not sure how plaintiff's injuries occurred: some thought they heard a noise, like plaintiff hitting his head on a metal desk, as he went to the ground. Others

thought plaintiff injured himself on the ground as he thrashed around while the officers tried to control him. One of the officers, Casselberry, suffered an injury to his knee because of plaintiff's activities, for which he underwent surgery several months after the incident.

The officers all testified that when an inmate acted as plaintiff did that it was common procedure to attempt to control the inmate, by taking him down to the ground especially when they were unsure as to what the inmate might do next. With respect to inmates confined at Southport, and particularly in this special, secured housing block, there was a real and enhanced concern for the safety of staff. Inmates housed in this particular D Block are the most severely restricted because of their prior disciplinary record. I believe based on the evidence that it was not unreasonable for the officers to take care and caution when dealing with such an inmate, especially after he spat directly into the face of an officer who stood but a few inches from him.

After the spitting incident, the officers did take Bonet into his cell, and they were there for about three minutes, according to the log on the videotape. During that three minute time period, they subdued Bonet, removed his handcuffs from the front and reattached them with his hands behind his back. They then positioned Bonet on his knees near the door and the officers all backed out of the cell and closed the door. Once outside the cell, they extracted the handcuffs through the opening in Bonet's cell door.

## CONCLUSIONS OF FACT AND LAW

One of the salient features of this case is that the plaintiff admitted much of what the officers described: that is, that he spat directly into the face of one of the officers and that he struggled with

the officers while on the ground. Although Bonet claims that the frisk was inappropriate, the video of that activity, which covers only about 45 seconds, demonstrates no such thing. The officers testified that pat frisks are required because inmates can conceal items, some of them dangerous, on their body.

I have no doubt that Casselberry and perhaps the other officers were upset at Bonet's act of spitting into Casselberry's face. Who would not be upset by such an activity? With that display, it was not unreasonable for the officers to use force to control plaintiff from committing further acts against these officers.

The Court must give leeway to corrections officers charged with maintaining prison discipline and protecting staff and inmates at a maximum security prison such as Southport. Heightened care and concern is necessary in this particular facility and especially in this particular housing block. It is clear that force often needs to be used in a prison setting, but not every use of force amounts to a constitutional violation. The Court must give deference to prison officials in carrying out their duties.

There is no video of what happened inside Bonet's cell. The officers' version differs radically from Bonet's. Bonet suggests that the nature of his injuries is direct evidence of what he claims: that the officers kicked and punched him in the face. The medical reports and the photographs do show that plaintiff suffered injuries to his face. There is a video of his treatment at the hospital infirmary. It mostly the depicts cleaning of plaintiff's face: Bonet was removed from the infirmary after about ten minutes. He was offered stitches for the cut above his eye, but he refused. X-rays were later taken of his face and there were no fractures.

The injuries that plaintiff received *could* have been caused if the officers did beat Bonet as he claims. On the other hand, I believe that the injuries are also consistent with an inmate being taken to the ground by several large correction officers and by Bonet's acts of struggling with the officers as he lay on the concrete floor. Having made the foolish decision to spit in an officer's face, plaintiff suffered the consequence of the officers' attempts to control him and prevent a reoccurrence of that behavior. It is not unreasonable to believe that incident to such a scuffle plaintiff may have suffered some bruising and have received lacerations to his face.

Defendants suggest, through counsel during closing argument, that Bonet would have suffered much more grievous injuries had the officers kicked and pummeled Bonet as he claimed they did. Perhaps so. On the other hand, the injuries actually sustained certainly demonstrate that Bonet suffered some trauma as a result of the incident. The question is, of course, what was the source and cause of the trauma.

With the luxury of hindsight, more than ten years after the incident, it may be that the officers could have used less force than they did. Such use of force, though, does not necessarily establish a constitutional violation.

Plaintiff must prove his case. He must prove by a preponderance of the evidence that the officers used the force that they did, maliciously and sadistically, for the purpose of causing harm and pain and for no legitimate, penological purpose. I believe that plaintiff has failed to carry his burden.

Although the injuries sustained by Bonet are consistent with having suffered a beating, they are also consistent with being taken down to a concrete floor by two or three correction officers. I

credit the officers' testimony that they did not maliciously beat or assault Bonet; rather, I find that the officers used strong force to control and neutralize an inmate who committed, in their presence, the most unsavory act of spitting in the face of one of the officers.

In order to prevail on a claim alleging a violation of the Eighth Amendment, plaintiff must establish that defendants acted maliciously and sadistically to cause harm to plaintiff. I find that the officers applied force in a good faith effort to maintain and restore discipline and to ensure the safety of the officers involved. I believe plaintiff has failed to establish that the use of force was so malicious and so unjustified as to constitute a knowing willingness to harm and injure the plaintiff.

## CONCLUSION

Based on the above, I find NO CAUSE OF ACTION for relief and direct the Clerk to enter a judgment in favor of all defendants on the docket of this Court and dismiss plaintiff's complaint.[1]

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 26, 2009.

---

[1] Regardless of the Court's rulings as to the other defendants, there appears to be no basis to conclude that Officer Moss engaged in any acts which might constitute a violation of the Eighth Amendment. Moss's only activities appear to be retrieving a strap from the console to assist the officers in removing Bonet's handcuffs once he had been subdued.